UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

FRANCISCO CORTES,

                         Plaintiff,      :    Case No. 1:17-CV-05634-RWS

           – against –

TWENTY-FIRST CENTURY FOX AMERICA,
INC., 21ST CENTURY FOX AMERICA, INC.,
TWENTY-FIRST CENTURY FOX, INC., JOHN
DOE and JANE DOE,

                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

DECHERT LLP
Andrew J. Levander
Linda C. Goldstein
Nicolle L. Jacoby
1095 Avenue of the Americas
New York, New York  10036
Tel. (212) 698-3500

*Attorneys for Defendants 21st
Century Fox America, Inc. and
Twenty-First Century Fox, Inc.*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ..................................................................................................... 4

    A.    Holder Tells The New York Times She Was Assaulted By Plaintiff
Months Before She Tells Fox News ........................................................................ 4

    B.    Plaintiff Voluntarily Signs a Redacted Settlement Agreement With Holder
That Prohibits Holder from Publicly Disparaging Him and Confirms His
Obligation Not to Publicly Disparage Holder ......................................................... 7

    C.    The New York Times Publishes an Article About Holder's Claims ..................... 9

    D.    Plaintiff's Breach of Contract and Tort Claims ................................................... 11

    E.    Plaintiff's Nonsensical Conspiracy Theory .......................................................... 12

ARGUMENT ...................................................................................................................... 15

    I.    The Breach of Contract Claim Fails to Plead Any Breach ................................. 16

    II.    The Fraudulent Misrepresentation Claim Fails Because Plaintiff Does Not
Identify Any Fraudulent Misrepresentation on Which He Relied ...................... 18

    III.    The Conspiracy to Commit Fraud Claim Fails Because Plaintiff Does Not
Identify Any Fraudulent Misrepresentation. ....................................................... 20

    IV.    The Intentional Interference With Contractual Relations Claim Fails
Because Defendants Were a Party to the Allegedly Breached Contract ............. 21

    V.    The Defamation Claims Fail Because Plaintiff Does Not Identify Any
False Statement That Defendants Made About Him ........................................... 22

CONCLUSION ................................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re AOL, Inc. Repurchase Offer Litig.*,
    966 F. Supp. 2d 307 (S.D.N.Y. 2013)...................................................................................21

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)........................................................................................................4

*Bank of New York v. Yugoimport*,
    745 F.3d 599 (2d Cir. 2014)............................................................................................15

*In re Bear Stearns Companies, Inc. Securities, Derivative, and ERISA Litig.*,
    995 F. Supp. 2d 291 (S.D.N.Y. 2014).............................................................................19

*C3 Media & Marketing Group, LLC v. Firstgate Internet, Inc.*,
    419 F. Supp. 2d 419 (S.D.N.Y. 2005).............................................................................19

*Campeggi v. Arche Inc.*,
    No. 15 Civ. 1097 (PGG), 2016 WL 4939539 (S.D.N.Y. Sept. 14, 2016) ...............................21

*Carter v. Visconti*,
    233 A.D.2d 473 (2d Dep't 1996).....................................................................................25

*Celle v. Filipino Reporter Enterprises Inc.*,
    209 F.3d 163 (2d Cir. 2000)............................................................................................23

*Charles v. Levitt*,
    No. 15 Civ. 9334 (PAE), 2016 WL 3982514 (S.D.N.Y. July 21, 2016) ................................13

*Croton Watch Co., Inc. v. National Jeweler Magazine, Inc.*,
    Case No. 06 Civ. 662, 2006 WL 2254818 (S.D.N.Y. Aug. 7, 2006) .....................................24

*Curley v. AMR Corp.*,
    153 F.3d 5 (2d Cir. 1998)................................................................................................15

*Davis v. Nyack Hospital*
    130 A.D.3d 455 (1st Dep't 2015) ....................................................................................17

*Durante Bros. & Sons v. Flushing Nat. Bank*,
    755 F.2d 239 (2d Cir. 1985)............................................................................................20

*Elias v. Rolling Stone LLC*,
    No. 16-2465-cv, 2017 WL 4126956 (2d Cir. Sept. 19, 2017)...........................................23, 24

*Fillmore E. BS Fin. Subsidiary LLC v. Capmark Bank,*
 No. 11 Civ. 4491 PGG, 2013 WL 1294519 (S.D.N.Y. Mar. 30, 2013) ..................................21

*Fin. One Pub. Co. v. Lehman Bros. Special Fin.,*
 414 F.3d 325 (2d Cir. 2005)...................................................................................................16

*Finley v. Giacobbe,*
 79 F.3d 1285 (2d Cir. 1996)...................................................................................................21

*Giuffre v. Maxwell,*
 Case No. 15 Civ. 7433, 2017 WL 1536009 (S.D.N.Y. April 22, 2017)................................24

*Golden Buddha v. New York Times Co.,*
 182 Misc. 579 (Sup. Ct. 1943)...............................................................................................17

*IMG Fragrance Brands, LLC v. Houbigant, Inc.,*
 759 F. Supp. 2d 363 (S.D.N.Y. 2010).....................................................................................20

*International Swaps and Derivatives Ass'n, Inc. v. Socratek, L.L.C.,*
 712 F. Supp. 2d 96 (S.D.N.Y. 2010).........................................................................................7

*JP Morgan Chase v. J.H. Elec. of New York, Inc.,*
 69 A.D.3d 802 (2d Dep't 2010)..............................................................................................17

*Kahn v. New York Times Co., Inc.,*
 269 A.D.2d 74 (1st Dep't. 2000).............................................................................................24

*Lerner v. Fleet Bank, N.A.,*
 459 F.3d 273 (2d Cir. 2006)....................................................................................................18

*LightSquared, Inc. v. Deere & Co.,*
 No. 13 Civ. 8157, 2015 WL 585655 (S.D.N.Y. Feb 5, 2015)................................................20

*Mapinfo Corp. v. Spacial Re-Engineering Consultants,*
 No 02 Civ.1008, 2006 WL 2811816 (N.D.N.Y. Sept. 28, 2006)...........................................17

*McLaurin v. New Rochelle Police Officers,*
 368 F. Supp. 2d 289 (S.D.N.Y. 2005).....................................................................................21

*Patton v. Egan,*
 No. 12 Civ. 2500, 2014 WL 4652489 (S.D.N.Y. Sept. 18, 2014)..........................................22

*Printers II, Inc. v. Professionals Publishing, Inc.,*
 784 F.2d 141 (2d. Cir. 1986)...................................................................................................25

*Schick v. Ernst & Young,*
 141 F.R.D. 23 (S.D.N.Y. 1992)...............................................................................................18

*Small Bus. Bodyguard Inc. v. House of Moxie, Inc.*,
   230 F. Supp. 3d 290, 311 (S.D.N.Y. 2017)............................................................................23

*Sudul v. Computer Outsourcing Servs.*,
   868 F. Supp. 59 (S.D.N.Y. 1994) ..........................................................................................19

**Other Authorities**

Black's Law Dictionary (10th ed. 2014)........................................................................................17

Federal Rule of Civil Procedure 9(b).............................................................................................18

Federal Rule of Civil Procedure 12(b)(6) ...........................................................................4, 7, 25

## PRELIMINARY STATEMENT

Beginning in July 2017, multiple sexual harassment lawsuits were brought against non-party Fox News Network, LLC ("Fox News"), an indirect subsidiary of the Defendants in this action.[1] As the Amended Complaint reflects, these lawsuits resulted in the forced departures of high-profile executives and talent and well-publicized accounts of high-dollar settlements for the women who alleged they had been harassed. But, as happens all too often, Defendants' salutary efforts to redress fundamental problems in the Fox News workplace has also attracted a number of opportunists.

Plaintiff Francisco Cortes is one such claimant. He has sued Fox News on a variety of theories arising out of an article published in The New York Times on March 8, 2017, entitled "Fox Is Said to Settle With Former Contributor Over Sexual Assault Claims." Am. Compl. Ex. A ("NYT Article"). The lawsuit is remarkable in many ways:

- Plaintiff, a former Fox News executive, does not claim he was the victim of any sexual misconduct. In fact, as the Amended Complaint concedes, a former Fox News contributor, Tamara Holder, alleged that Plaintiff sexually assaulted her in his office. Am. Compl. Ex. A. Plaintiff concedes that he had sexual contact with Holder, but maintains that it was "consensual." Am. Compl. ¶¶ 7, 33, 92.

- Plaintiff concedes that his employment at Fox News ended after Fox News investigated Holder's allegations against him, but he does not allege that the termination was wrongful. Nor could he. ██████████████████████████████

---

[1]  "Defendants" refers to Defendants Twenty-First Century Fox, Inc. and its wholly-owned subsidiary, 21st Century Fox America, Inc. ("21CFA"), which are indirect corporate parents of non-party Fox News. There is no entity by the name of "Twenty-First Century Fox America, Inc."

████████████████████████████████████████████████████

███████████████████████████████████

- Plaintiff does not and cannot allege that Fox News defamed or disparaged him at the time of his exit in October 2016 because Fox News made no statement about his departure.

Plaintiff's claims instead arise from the publication of the NYT Article, which the Amended Complaint concedes was based on information that Holder provided to The New York Times *long before she ever even reported her allegation to Fox News*. Rather than sue The New York Times for printing this account or Holder for providing it—which would put the truth of her allegations at issue—Plaintiff instead devotes 160 paragraphs to weaving bogus claims against the Defendants without asserting any claim against the woman who publicly accused him of sexual assault.

This unlikely mission fails at the outset:

1. Plaintiff's common law claims of disparagement, defamation, libel and slander are based exclusively on a joint statement provided to The New York Times by Fox News and Holder. The joint statement included only three simple facts, *none of which is disputed*: (a) Holder had "reported an incident of sexual assault at Fox News headquarters"; (b) "the company promptly investigated the matter"; and (c) Fox News took "decisive action, for which Ms. Holder thanks the network." Am. Compl. Ex. A at 4–5. The joint statement did not identify the alleged assailant(s) by name, title, gender, employment status or otherwise. It did not provide any details of the alleged assault or express a view on the merits of Holder's allegations. The joint statement is neither disparaging nor defamatory, and cannot be the basis for Plaintiff's breach of contract, defamation, libel and slander claims.

2.      The NYT Article did print Plaintiff's name and details of the alleged assault, but
Plaintiff does not allege that either Defendants or Fox News provided that information to The
New York Times. Instead, Plaintiff admits that Holder, who is not a party to this case, gave that
information to The New York Times *in July 2016*, eight months before Fox News and Holder
issued the joint statement in March 2016 and long before Fox News or the Defendants had any
inkling of Holder's allegations. Am. Compl. ¶¶ 16, 83. Defendants cannot be liable for
statements that Holder or her agents made to The New York Times on their own and without Fox
News's knowledge.

3.      Holder's own settlement agreement with the Defendants required that Plaintiff not
disparage her and that she not disparage him. Plaintiff asserts a fraudulent misrepresentation
claim based upon his execution of this agreement. That claim founders because the Amended
Complaint does not identify a single false statement that was made to Plaintiff in the course of
negotiating that agreement.

In the face of these uncontested facts, which appear on the face of the Amended
Complaint or the documents incorporated into it, Plaintiff cannot state a claim for breach of
contract, fraudulent misrepresentation, defamation, slander or libel. Plaintiff's other theories
also fail as a matter of law: there is no independent tort of "civil conspiracy"; and Defendants
cannot be held liable for tortiously interfering with Holder's performance of her obligations
under her settlement agreement, since they were party to it. Plaintiff's lengthy *ad hominem*
attacks on the Murdoch family and his conspiracy theories involving two unlikely conspirators
(Fox News and The New York Times) cannot fix any of these shortcomings. Because Plaintiff's

"conclusory statements" do not state any "plausible claim for relief" under a "common sense" review, the Court should dismiss this legally deficient Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

## STATEMENT OF FACTS

The prolix allegations of the Amended Complaint, spread over 55 pages containing 160 paragraphs, are summarized below only insofar as they are relevant to the seven causes of action for breach of contract and various common-law torts asserted in this diversity action. Defendants' recitation of the alleged facts in this memorandum should not be misconstrued as accepting any of Plaintiff's rambling and baseless assertions.

### A. Holder Tells The New York Times She Was Assaulted By Plaintiff Months Before She Tells Fox News

As described in the NYT Article, Plaintiff was a vice president for Fox News Latino, a division of Fox News. Am. Compl. Ex. A.[2] Non-party Holder is an attorney who became a "regular contributor" on Fox News in 2010. Am. Compl. ¶¶ 107, 108. Among other things, she created a show called "Sports Court" for Fox News's website, which explored "legal and political issues in sports." *Id.* ¶ 107.

In July 2016, the long-time Chairman of Fox News, Roger Ailes, was terminated after former Fox News anchor Gretchen Carlson filed a sexual harassment complaint against him. *See* Am. Compl. ¶ 42 (referring to "the sexual harassment scandal at FOX News that led to the ouster of Roger Ailes, its chairman").[3] The Carlson lawsuit and Ailes's termination were front-page

---

[2]    The Amended Complaint incorrectly alleges that Plaintiff was employed by Fox News's indirect parent, Defendant Twenty-First Century Fox America, Inc. Am. Compl. ¶ 1. The error is immaterial to the claims asserted in the Amended Complaint.

[3]    *See* John Koblin, Emily Steel & Jim Rutenberg, *Roger Ailes Leaves Fox News, and Rupert Murdoch Steps In*, N.Y. TIMES, July 21, 2016, *available at*

news and Emily Steel, a reporter for The New York Times, reached out to Holder to see if she

had been harassed by Ailes. Am. Compl. ¶ 83. In an interview quoted in the Amended

Complaint, Holder describes that early conversation with The New York Times as follows:

> Emily Steel [of The New York Times] sent me a direct message on
> Twitter. She wanted to know if there were other stories about
> Roger [Ailes]. I answered her that I have nothing to say about
> Roger, but I know somebody who was sexually assaulted by a Fox
> News executive.

Am. Compl. ¶ 83 (quoting Carol Felsenthal, *Former Fox News Pundit Who Accused Exec of*

*Sexual Assault Returns to Chicago*, CHICAGO MAGAZINE, May 2, 2017).[4]  Holder then told The

New York Times about an alleged sexual assault by Plaintiff:

> Describing what happened to me *in Cortes's office* felt like letting
> the cat out of the bag. I said, holy shit, I'm going to be quoted in
> The New York Times. That was in July 2016 and it led to the
> worst six months of my life.

*Id.* (emphasis added). The New York Times did not print Holder's story in July 2016, when

Holder first spoke to Steel, because Holder "had been suppressing this [story.]" Am. Compl. ¶ 83

(quoting Chicago Magazine article).

The Amended Complaint acknowledges that at the time Holder described the alleged

sexual assault by Plaintiff to The New York Times in July 2016, *she had not disclosed it to*

*anyone at Fox News*. Later, on September 13, 2016, when trying to negotiate a contract with

Fox News, Holder reportedly asked her agent "how she should handle the sexual assault claim."

Am Compl. ¶ 53 (quoting Yashar Ali, *Top Talent Agency Discouraged Fox News Contributor*

---

https://www.nytimes.com/2016/07/22/business/media/roger-ailes-fox-news.html (last
accessed Oct. 5, 2017).

4      *Available at* http://www.chicagomag.com/Chicago-Magazine/Felsenthal-Files/April-
2017/Tamara-Holder/ (Last accessed Oct. 5, 2017).

*From Reporting Alleged Sexual Assault*, Huffington Post, May 2, 2017).[5]  Initially, she decided

that she was "NOT going to confront Fox with the incident we discussed," meaning Fox News

did not then know about her claim.  *Id.*  As stated in the NYT Article, it was not until late

September that Holder changed her mind and decided to report that she had been "sexually

assaulted" to Fox News.  Am. Compl. Ex. A. at 6.  But she "did not state who was involved or

provide details of what had occurred[.]"  *Id.* Even after she made this report, she still waited until

"late October" before "disclos[ing] the details of her claims to Fox News executives."  *Id.*[6]

Thus, according to the facts pleaded in the Amended Complaint, Fox News did not know that

Plaintiff was the alleged assailant until several months *after* Holder had described the assault and

provided Plaintiff's name to The New York Times.

     Shortly after Holder disclosed his name to Fox News in October 2016, Plaintiff's

employment was terminated and he became a "former employee" who is now receiving

"severance payments."  Am. Compl. ¶¶ 1, 25, 47*; see also* Am. Compl. Ex. A (stating that

Plaintiff was terminated "days after" Holder disclosed his name to Fox News executives).  The

Amended Complaint's many allusions to Plaintiff's "various contractual obligations" not to

disparage Holder (Am. Compl. ¶ 96; *see also* Am. Compl. ¶¶ 65, 109, 111, 113), are a cryptic

reference to ███████████████████████████████████████████████████

---

[5]    *Available at* http://www.huffingtonpost.com/entry/tamara-holder-icm-fox-news_us_590792c4e4b02655f83f4a8c (Last accessed Oct. 5, 2017).

[6]    In a portion of the Chicago Magazine article that Plaintiff does not quote in the Amended Complaint, Holder specifies with more precision that she provided Fox with the name of her alleged assailant on October 21, 2016.  *See supra* fn. 4.



### B. Plaintiff Voluntarily Signs a Redacted Settlement Agreement With Holder That Prohibits Holder from Publicly Disparaging Him and Confirms His Obligation Not to Publicly Disparage Holder

As alleged in the Amended Complaint, "[o]n a date previous to January 1, 2017," Holder presented Fox News with a draft complaint spelling out her claims. Am. Compl. ¶ 19. On December 27, 2016, Plaintiff alleges that his counsel met with lawyers at Paul, Weiss, who represented Defendants, to discuss whether Plaintiff would "give testimony against Tamara Holder in a mediation between FOX and Tamara Holder." *Id.* ¶ 113. Plaintiff alleges that he resisted doing so because he believed that such testimony would be "an unintentional violation" of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.*

---

7 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

8 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ In ruling on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court "may consider 'undisputed documents, such as a written contract . . . incorporated by reference in the complaint.'" *See International Swaps and Derivatives Ass'n, Inc. v. Socratek, L.L.C.*, 712 F. Supp. 2d 96, 99 (S.D.N.Y. 2010) (quoting *Chapman v. New York State Div. of Youth*, 546 F.3d 230, 234 (2d Cir. 2008)).

Holder's claims in this draft complaint, including those asserted against Plaintiff, were
resolved in February 2017 when Holder, 21CFA and Plaintiff each signed the Holder Settlement
Agreement. *Id.* ¶ 20 & Ex. B. The redacted form of the agreement that Plaintiff voluntarily
signed, under advice from his own counsel, provides that he assented only "as to Paragraph 6c
and 12 above." *Id.*

Paragraph 6c, appearing on page 5, states that Plaintiff "knowingly and voluntarily
releases" Holder from any claims that he may have or had against her up until the "Effective
Date" of the Holder Settlement Agreement. *See* Am. Compl. Ex. B at 5. Reciprocally, Holder
would "waive, settle, and release all claims [she] has or may have against the Released Parties up
to the present, except as provided in Paragraph 10" *Id.* at 14. Before signing the Agreement,
Plaintiff asked for clarification regarding the "Paragraph 10" reference and further asked if he
was one of the "Released Parties." Am. Compl. ¶ 22. According to Plaintiff, counsel for Fox
News answered his questions by informing him that "Paragraph 10 referred to only requests by
governmental authorities for information" and that "Mr. Cortes was one of the Released Parties."
*Id.* Plaintiff claims he relied on these alleged representations in deciding to execute the
Agreement. *Id.* He does not allege that either alleged representation was false.

Paragraph 12 of the Holder Settlement Agreement is a "non-disparagement" clause:

> 12.    Non-Disparagement: Holder agrees not to disparage,
> malign, or defame any Released Party, or to publish or cause to be
> published any statements portraying any Released Party in an
> unfavorable light. [21CFA], [REDACTED] and Cortes agree not
> to disparage, malign or defame Holder, or to publish or cause to be
> published any statements portraying Holder in an unfavorable
> light. A statement by a Party that violates this provision subjects
> that Party to liquidated damages under Paragraph 11(n) of this
> Agreement.

*See* Am. Compl. ¶ 27 & Ex. B. The only obligation that this paragraph imposes on 21CFA is an
obligation not to disparage Holder, not Plaintiff. Indeed, Plaintiff acknowledges that his

obligations and rights under this paragraph are limited to not disparaging, and not being disparaged by, *Holder*. *See* Am. Compl. ¶ 64 (conceding that Holder Settlement Agreement "cement[s] *Tamara Holder's* obligation not to continue to disparage [Plaintiff]") (emphasis added); ¶ 77 ("Mr. Cortes and Tamara Holder agreed not to disparage one another").

Plaintiff acknowledges that he and his own counsel—the same lawyer who signed the Complaint and Amended Complaint in this case—reviewed the redacted Holder Settlement Agreement, that he and his counsel had an opportunity to ask questions about the redacted portions, and that those questions were answered by Defendants' counsel. Am. Compl. ¶ 22. Plaintiff relied on the advice of his own counsel in deciding to sign the Holder Settlement Agreement in the redacted form presented to him. *Id.* Although Plaintiff devotes a significant portion of his pleadings to complaining that the names of two additional signatories were not disclosed to him, he knew or should have known this fact when he signed the Holder Settlement Agreement, since the page he executed contained two redacted signature lines. Am. Compl. Ex. B. The identities of these additional signatories have no bearing on whether Defendants breached a contractual obligation, committed fraud, or defamed Plaintiff.

## C. The New York Times Publishes an Article About Holder's Claims

Plaintiff alleges that two weeks after he signed the Holder Settlement Agreement, he was disparaged by "a joint statement to the New York Times regarding the alleged incident with Mr. Cortes[.]" Am. Compl. ¶ 62; *see also* Am. Compl. ¶¶ 41, 66, 96. The New York Times described that joint statement as follows:

> Fox News released a joint statement with Ms. Holder saying that in September 2016 she "reported an incident of sexual assault at Fox News headquarters from the prior year." "Immediately after Ms. Holder notified Fox News of the alleged incident, the company promptly investigated the matter and took decisive action, for which Ms. Holder thanks the network," the statement continued. "Fox News is grateful to Ms. Holder for her many contributions

> during her tenure at the network and wishes her continued
> success."

Am. Compl. Ex. A at 4-5. The NYT Article was published on March 8, 2017 and indicates that

this joint statement was issued on that same day. *Id.* at 4. The NYT Article does not suggest that

the joint statement included Plaintiff's name or any other manner of identifying him, and

Plaintiff does not allege otherwise. Plaintiff concedes, as he must, that it was true to state that

Holder had "reported an incident of sexual assault[.]" Am. Compl. ¶ 19 (referring to the draft

complaint submitted by Holder's counsel). Further, he does not deny that the alleged incident

was "promptly investigated" or that Defendants "took decisive action."

Holder is the principal source for virtually all of the other statements about the alleged

assault in the NYT Article, which is accompanied by a posed photograph of her taken "in

October," four months before the Holder Settlement Agreement was executed. Am. Compl.

Ex. A at 2. As stated in the Amended Complaint, she had described the alleged assault to Steel

in July 2016. Am. Compl. ¶ 83. Plaintiff further pleads that Steel and Holder collaborated for

"several months before [Holder] made her allegations to Fox" and that, during this time, Steel

was involved in the "selection and targeting of Mr. Cortes[.]" *Id.* ¶ 85 (emphasis removed). As

part of this "collaboration," the Amended Complaint pleads that Holder provided additional

materials to The New York Times on her own or through her attorneys, including "a document

drafted by Ms. Holder's lawyers that outlines her claims." *Id.* ¶¶ 85, 100. According to the NYT

Article, Holder's claims were also "confirmed by the four people who were told of Tamara

Holder's allegations." *Id.* ¶ 93. Plaintiff does *not* allege that any of these four people were

affiliated with or acting on behalf of the Defendants. Rather, Plaintiff alleges that the four

witnesses were made up to lend a "pretense of credibility" to the article in "violation of Emily

Steel's, and by extension The New York Times', ethical obligations." *Id.*

Plaintiff further pleads that Defendants' legal counsel, Paul, Weiss, "were involved in this intentional breach of contract" but his basis for this belief appears to be a single sentence in the NYT Article stating that Plaintiff's termination was confirmed by "two people familiar with the matter." *Id.* ¶ 101. Plaintiff speculates that "[t]hese two people had to be the primary two people at Paul Weiss" because "it cannot be a coincidence that the March 8ᵗʰ New York Times Article mentions precisely two people[.]" *Id.* ¶ 102. Plaintiff provides no basis for assuming either of these two unnamed people must be Paul, Weiss attorneys as opposed to any other two people.[9]

## D. Plaintiff's Breach of Contract and Tort Claims

Plaintiff filed this lawsuit on July 25, 2017 against 21CFA and "John Doe and Jane Doe." *See* Dkt. 1. He amended his complaint on August 6, 2017 to add 21CFA's corporate parent, Twenty-First Century Fox, Inc., and "21ˢᵗ Century Fox America, Inc.," a non-existent entity. *See* Dkt. 4. The seven causes of action alleged against the Defendants are:

***Breach of Contract.*** The First Cause of Action asserts that Holder, who is not a party to this lawsuit, and Defendants breached their "contractual obligations" with Cortes by publishing the joint statement. Am. Compl. ¶¶ 117-120.

***Fraudulent Misrepresentation.*** The Second Cause of Action asserts that Defendants "intentionally misrepresent[ed] material facts" that Plaintiff "rel[ied] upon . . . to his detriment." *Id.* ¶¶ 124-25. These "facts" are not spelled out anywhere in the Amended Complaint.

---

9    Plaintiff also speculates, in the alternative, that Holder may have "permit[ted] FOX'[sic] attorneys Paul, Weiss to provide documents outlining her allegations" to Steele. Am. Compl. ¶ 100. In support of this statement, Plaintiff cites language from the NYT Article indicating only that *Holder's* counsel, which plainly was not Paul, Weiss, had shared materials with The New York Times. *Id.*

***Civil Conspiracy to Defraud***.  The Third Cause of Action asserts that Defendants

"conspire[d] to defraud Mr. Cortes through a corrupt agreement between two or more persons[.]"

*Id.* ¶ 130.  Without specifying how he was defrauded or what they did, he alleges that there were

"conspirators" both in and out of New York.  *Id.* ¶ 131.

***Intentional Interference With Contractual Relations***.  The Fourth Cause of Action

asserts that Defendants "intentionally and improperly interfered" with the Holder Settlement

Agreement.  *Id.* ¶ 136.

***Defamation, Libel Per Se, Slander Per Se***.  The Fifth, Sixth and Seventh Causes of

Action each generally assert defamation claims based on Plaintiff's assertion that "[e]ach of the

statements set forth [in the Amended Complaint] was defamatory and false" and "exposed

[Plaintiff] to public hatred, contempt, ridicule, and disgrace."  *Id.* ¶ 139.

According to Plaintiff, publication of the NYT Article has harmed his employment

prospects.  Am. Compl. ¶ 37.

## E. Plaintiff's Nonsensical Conspiracy Theory

The Amended Complaint sheathes its frivolous legal claims in an elaborate conspiracy

theory.  According to Plaintiff, the payment that Defendants made to Holder pursuant to the

Holder Settlement Agreement was not actually consideration for the release of her claims but

was, instead, a payment for Holder's agreement immediately to breach the non-disparagement

clause in the agreement by sharing the details of her allegations with Steel, who was also one of

the conspirators, and would publish those allegations in The New York Times. Am. Compl.

¶¶ 14, 39.  Plaintiff further hypothesizes that this plan was intended to enhance the likelihood

that News Corporation ("News Corp."), an entity affiliated with Defendants, would acquire

complete ownership of British Sky Broadcasting ("Sky") in the U.K.  *Id* ¶ 39.  Plaintiff also

accuses "the Murdochs" of being conspirators, presumably because News Corp., like 21CF, was

- 12 -

founded by Rupert Murdoch. *Id.* Plaintiff further suggests that the conspiracy was designed to "protect the identity and shelter the reputations" of two presumably non-Latino signatories whose names were redacted in the document that Plaintiff executed. *Id.* ¶¶ 10, 15, 55.

Plaintiff believes the goal of this conspiracy was to use Plaintiff as a "scapegoat" so that Defendants could "demonstrate that [they] aggressively handle[ ] sexual harassment complaints[.]" Am. Compl. ¶ 10. Plaintiff also suggests that he was targeted by this conspiracy because he is Latino, although he is quite candid in admitting he has no actual basis for making that accusation. *See* Am. Compl. ¶ 13 (conceding that Plaintiff does not know if the conspirators allegedly targeted him because of his race). Plaintiff suggests that each alleged conspirator took part in the conspiracy either because it would improve his or her public image or because it would result in financial gain. Am. Compl. ¶¶ 7, 14, 16, 36, 39, 72, 81-82.

Plaintiff's absurd conspiracy theories make no sense and, indeed, are contradicted by facts alleged in the Amended Complaint.[10]

*First*, the sordid account of the alleged sexual assault of Holder in Plaintiff's office could not be seen by anyone to "enhance" Defendants' image. *See* Am. Compl. Ex. A at 7 (after inviting Holder to his office and pouring shots of tequila, Plaintiff allegedly "got out of his chair, approached her chair, held the door shut with his left hand and used his right hand to push her mouth toward his penis, which he had taken out of his pants").

---

[10]     This is not the first time that Plaintiff's counsel has filed wild conspiracy allegations without foundation. Just last year, Judge Engelmayer sanctioned Plaintiff's counsel for filing a complaint that "alleges positively *no* improper conduct—indeed any conduct at all" against certain defendants and then attempting to conceal that weakness with "plainly irrelevant, absurd, and/or scurrilous statements" that the defendants had been involved in a conspiracy. *See Charles v. Levitt*, No. 15 Civ. 9334 (PAE), 2016 WL 3982514, *7 (S.D.N.Y. July 21, 2016).

*Second*, Defendants could not possibly have conspired to have Holder recount the alleged assault by Plaintiff to The New York Times. Holder had already provided the details of her claims to The New York Times in July 2016, which was at least two months before she first reported any assault or identified the name of her alleged assailant and eight months before Holder and Defendants gave the joint statement to The New York Times. Am. Compl. ¶ 83; Am. Compl. Ex. A at 6.

*Third*, Plaintiff's theory depends upon Steel serving as a "sycophant reporter[]" willing to do Defendants' bidding either because she had previously worked for the Wall Street Journal or because of 21CFA's influence in the news industry. Am. Compl. ¶ 115; *see also* Am. Compl. ¶¶ 14, 82 ("She worked at the Wall Street Journal, an entity owned by News Corp, owned by the Murdoch family, she writes about the 'TV + media business', and her relationship to Fox and the Murdochs is likely not unimportant to her."). Far from being Defendants' "sycophant," Steel worked for a rival news organization, The New York Times. *E.g.*, Am. Compl. ¶¶ 14, 16. In fact, she wrote the exposé on Bill O'Reilly's sexual harassment settlements, which led to the termination of Fox News' most prominent star. *Id.* ¶ 80.[11]

*Fourth*, in order to make sense of his improbable claim, Plaintiff pleads that he has a "belief," based purely on rank speculation, that Defendants "might have" separately agreed to indemnify Holder for any breach of the Holder Settlement Agreement. Am. Compl. ¶¶ 39, 74, 75. The lack of any factual allegation suggesting the existence of this phantom indemnity confirms the absurdity of Plaintiff's Amended Complaint.

---

[11]   Anticipating this defect in his theory, Plaintiff contends, without an iota of evidence, that Defendants instigated Steel's exposé on O'Reilly as well. Am. Compl. ¶ 79. Of course, hat allegation belies any claim that Plaintiff was hand-selected as a "patsy," or that he was somehow "scapegoated" because he is Latino. Am. Compl. ¶¶ 10, 39, 41.

*Fifth*, Plaintiff offers no explanation as to why the Holder Settlement Agreement was necessary in the first place if it was never intended to be binding.  Plaintiff provides no explanation—because none exists—as to why Defendants and Holder would waste time and money to have their attorneys negotiate a sham settlement agreement, let alone why Defendants or Holder would have included Plaintiff and his counsel in that process, ▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Plaintiff also litters his Amended Complaint with perceived slights.  Among other things, he complains that Steel reneged on an agreement to send his counsel an early version of the NYT Article, or that lawyers at Paul, Weiss preferred to discuss sensitive matters with him by telephone rather than by email, or that he received one severance payment at 10 a.m. instead of 3 a.m. on the day the payment was due.  Am. Compl. ¶¶ 18, 23, 47.  None of these non sequiturs nor Plaintiff's delusional conspiracy theories should distract the Court from the legal deficiencies in the causes of action pleaded in the Amended Complaint.

## ARGUMENT

Each of Plaintiff's claims is governed by New York law.[12]  New York would apply its own law to these claims since Defendants are headquartered in New York, the relevant contracts were negotiated and enforced in New York, Plaintiff and Holder were both employed in New York, and the joint statement at the center of these claims was made and published in New York, making New York both the "center of gravity" for these claims and the state with the greatest interest in their resolution.  *See Bank of New York v. Yugoimport*, 745 F.3d 599, 609 (2d Cir. 2014) ("New York courts adopt a "center of gravity" approach to choice-of-law questions in

---

[12]     *Curley v. AMR Corp.*, 153 F.3d 5, 12 (2d Cir. 1998) ("In diversity jurisdiction cases such as this, it is well settled that a federal court must look to the choice of law rules of the forum state.").

contract cases. This approach requires application of the law of the jurisdiction with the most

significant interest in, or relationship to, the dispute.") (internal citations omitted); *Fin. One Pub.*

*Co. v. Lehman Bros. Special Fin.*, 414 F.3d 325, 336-37 (2d Cir. 2005) ("[T]he preferred

analytical tool in tort cases is to apply 'interest analysis,' where the policies underlying the

competing laws are considered") (internal citations omitted).

## I. The Breach of Contract Claim Fails to Plead Any Breach

Plaintiff's First Cause of Action alleges that Defendants "breached their agreement with

Mr. Cortes . . . by disparaging Mr. Cortes and violating their confidentiality obligations to Mr.

Cortes." Am. Compl. ¶ 118. Although the First Cause of Action does not specify which

statement disparaged him, elsewhere the Amended Complaint indicates that it was the joint

statement made by Fox News and Holder that was published in the NYT Article. Am. Compl.

¶¶ 41, 62, 66, 98.[13] That joint statement, as published, contained three sentences:

> 1. In September 2016, Holder "reported an incident of sexual
>    assault at Fox News headquarters from the prior year."
>
> 2. "Immediately after Ms. Holder notified Fox News of the
>    alleged incident, the company promptly investigated the matter
>    and took decisive action, for which Ms. Holder thanks the
>    network."
>
> 3. "Fox News is grateful to Ms. Holder for her many
>    contributions during her tenure at the network and wishes her
>    continued success."

Am. Compl. Ex. A at 4-5. None of these statements disparages Plaintiff or even mentions him.

"Disparagement" is defined as "[a] *false* and injurious statement that discredits or detracts from

---

[13]    The Amended Complaint also does not specify which "agreement" was breached. The
Holder Settlement Agreement requires only that Holder, not the Defendants, refrain from
disparaging Plaintiff. Am. Compl. Ex. B. Defendants are not signatories to Plaintiff's
separation agreement with Fox News, which provides that Fox News cannot disparage
him. *See* Ex. 1.

the reputation of another's character, property, product, or business." Black's Law Dictionary (10th ed. 2014) (emphasis added). Plaintiff does not contend that any of these sentences is false. Nor did it discredit Plaintiff's reputation because it does not mention him by name, does not provide any way of identifying him, and does not describe the allegations Holder made about him or assess their merits. Courts regularly recognize that statements are not disparaging when the alleged "disparagement" is just a generalized statement that does not identify and/or impugn the subject. *See, e.g., Davis v. Nyack Hospital* 130 A.D.3d 455, 455 (1st Dep't 2015) (non-disparagement clause in settlement agreement not breached by writing a letter that does not provide any of the terms of the settlement); *Golden Buddha v. New York Times Co.,* 182 Misc. 579, 580 (Sup. Ct. 1943), *aff'd,* 267 A.D. 903, 48 N.Y.S.2d 327 (App. Div. 1944) (advertisement is not disparaging if it "is not on its face disparaging, nor is it ambiguous and reasonably susceptible of the meaning read into it by the plaintiffs").

Moreover, this claim must also be dismissed because Plaintiff fails to plead that "the alleged disparaging statements had [an] effect on [Plaintiff's] business" or caused some other form of damage. *Mapinfo Corp. v. Spacial Re-Engineering Consultants*, No 02 Civ.1008, 2006 WL 2811816, *10 (N.D.N.Y, Sept, 28, 2006). Although Plaintiff claims that he has had difficulty obtaining employment as a result of the NYT Article, he does not—and cannot—allege that any of that difficulty has been caused by the joint statement, which does not identify him or any of the claims that Holder had asserted against him. Am. Compl. ¶ 37. Plaintiff fails to plead that Defendants' conduct—which was limited only to providing the joint statement to The New York Times—has caused him any harm. *JP Morgan Chase v. J.H. Elec. of New York, Inc.*, 69 A.D.3d 802, 803 (2d Dep't 2010) (plaintiff must plead "existence of a contract, the plaintiff's

performance under the contract, the defendant's breach of that contract, *and resulting damages*")
(emphasis added).

## II. The Fraudulent Misrepresentation Claim Fails Because He Does Not Identify Any Fraudulent Misrepresentation On Which Plaintiff Relied

It is hornbook law that a litigant alleging fraud "must specify with particularity the
fraudulent statement or omission[.]" *Schick v. Ernst & Young*, 141 F.R.D. 23, 26 (S.D.N.Y.
1992). At a minimum, under Fed. R. Civ. P. 9(b) the complaint must "(1) specify the statements
that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the
statements were made, and (4) explain why the statements were fraudulent." *Lerner v. Fleet
Bank, N.A.,* 459 F.3d 273, 290 (2d Cir. 2006) (citation omitted). Plaintiff must also "allege
factual circumstances that give a 'strong inference' that the defendant had the requisite
fraudulent intent." *Schick*, 141 F.R.D. at 26 (citing *O'Brien v. National Property Analysts
Partners*, 936 F.2d 674, 676 (2d Cir. 1991)). Plaintiff utterly fails to meet this burden because he
does not identify a single fraudulent statement, nor does he plead that he relied on any such
statement.

Plaintiff pleads that "[a]t various times and places partially enumerated above, the
Defendants did also intentionally misrepresent material facts to Mr. Cortes." Am. Compl. ¶ 123.
Although Plaintiff refers to all of the prior 122 paragraphs in his Amended Complaint, he
provides no clarity at all as to when, where, and how Defendants purportedly misrepresented any
material fact to him. The *only* statements potentially attributable to Defendants on which he
claims to have relied are certain alleged "assurances" from Defendants' counsel, Paul, Weiss,
that he was one of the "Released Parties" benefitting from Holder's release in the Holder
Settlement Agreement and that Paragraph 10 of the Agreement applied only to "requests by
government authorities for information." Am. Compl. ¶ 22. Plaintiff does not (and cannot) claim

- 18 -

that either of these "assurances" was false. Indeed, there is no allegation that Holder did not release her claims against Plaintiff.

Even if Defendants did make a misrepresentation—one not described in the Amended Complaint—Plaintiff still would need to plead, with specificity, that he relied upon it. *In re Bear Stearns Companies, Inc. Securities, Derivative, and ERISA Litig.*, 995 F. Supp. 2d 291, 312 (S.D.N.Y. 2014) ("To plead common law fraud, a plaintiff must allege with particularity that it actually relied upon the supposed misstatements."). Plaintiff does not, and cannot, plead actual reliance on any unstated misrepresentation because

There can be no allegation that Plaintiff suffered any detriment as a result of some representation purportedly made by Defendants.

Additionally, Plaintiff's allegations that Defendants misrepresented their intent to abide by the terms of the Holder Settlement Agreement (Am. Compl. ¶ 45) do not state a valid claim under New York law because such claims merely restate the general rule that a contracting party must abide by its contract. *See C3 Media & Marketing Group, LLC v. Firstgate Internet, Inc.*, 419 F. Supp. 2d 419, 432 (S.D.N.Y. 2005) ("a misrepresentation concerning a party's intention not to perform its obligations under a contract 'is no different from the commonly presumed intention either to perform or to pay damages for breach of contract, and should be penalized no more extensively'") (quoting *Great Earth Intern. Franchising Corp. v. Milks Development*, 311 F. Supp. 2d 419, 427 (S.D.N.Y. 2004). In such circumstances, "Plaintiff's sole remedy is for breach of contract." *Sudul v. Computer Outsourcing Servs.*, 868 F. Supp. 59, 62 (S.D.N.Y.

1994). Of course, the Holder Settlement Agreement did not obligate Defendants to do, or refrain from doing, anything with respect to Plaintiff, for the obligation not to disparage Plaintiff in this agreement applies only to Holder. Am. Compl. Ex. B ¶ 12. Thus Defendants also could not possibly have misrepresented their intent to abide by a non-existent obligation.

## III. The Conspiracy to Commit Fraud Claim Fails Because Plaintiff Does Not Identify Any Fraudulent Misrepresentation.

Plaintiff's Third Cause of Action for "Civil Conspiracy to Defraud" is defective for at least two reasons.

*First*, "conspiracy" is not recognized as an independent tort under New York law. *See Durante Bros. & Sons v. Flushing Nat. Bank*, 755 F.2d 239, 251 (2d Cir. 1985) ("New York does not recognize a substantive tort of conspiracy"). Accordingly, the "conspiracy to defraud" claim fails because Plaintiff has not adequately pleaded, with or without particularity, that Defendants made any fraudulent statement on which he relied. *See* Section II, above.

*Second*, Plaintiff has not adequately pleaded that Defendants conspired with any other person or entity mentioned in the Amended Complaint to defraud him. Such a claim would require him to allege:

> (1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a common purpose or plan; and, (4) resulting damage or injury.

*IMG Fragrance Brands, LLC v. Houbigant, Inc.*, 759 F. Supp. 2d 363, 386 (S.D.N.Y. 2010) (internal quotation omitted). These elements must be pleaded "with particularity; bald speculation or a conclusory statement that individuals are coconspirators is insufficient to establish a claim for conspiracy." *LightSquared, Inc. v. Deere & Co.*, No. 13 Civ. 8157, 2015 WL 585655, *18 n. 22 (S.D.N.Y. Feb 5, 2015). Critically, Plaintiff must provide "well plead[ed] allegations that render the theory plausible on its face" or else his claims must be dismissed as

"mere speculation." *See In re AOL, Inc. Repurchase Offer Litig.*, 966 F. Supp. 2d 307, 315 (S.D.N.Y. 2013) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Claims of conspiracy that are vague and provide no basis in fact for the conclusion asserted must be dismissed." *McLaurin v. New Rochelle Police Officers*, 368 F. Supp. 2d 289, 295 (S.D.N.Y. 2005). Plaintiff's factually baseless, internally inconsistent and irrational conspiracy theories plainly fail to meet this test.

## IV.    The Intentional Interference With Contractual Relations Claim Fails Because Defendants Were a Party to the Allegedly Breached Contract

It is well established under New York law that a plaintiff seeking to hold a defendant liable for tortious interference with a contract must show that the defendant was not a party to that same contract because if the defendant is a party to the contract, then a breach of contract claim is his exclusive remedy. *Finley v. Giacobbe*, 79 F.3d 1285, 1295 (2d Cir. 1996) (affirming district court's grant of summary judgment to the defendants on a claim of tortious interference because the plaintiff failed to show that the defendants were not parties to the contract); *Fillmore E. BS Fin. Subsidiary LLC v. Capmark Bank*, No. 11 Civ. 4491 PGG, 2013 WL 1294519, at *14 (S.D.N.Y. Mar. 30, 2013), *aff'd*, 552 F. App'x 13 (2d Cir. 2014) (dismissing plaintiff's tortious interference claims because the defendants were signatories to the contract). Therefore, as a matter of law, a defendant cannot tortiously interfere with his or her own contract. *Campeggi v. Arche Inc.*, No. 15 Civ. 1097 (PGG), 2016 WL 4939539, at *10 (S.D.N.Y. Sept. 14, 2016) *citing TVT Records v. Island Def Jam Music Grp.*, 412 F.3d 82, 88 (2d Cir. 2005) (dismissing plaintiff's tortious interference claims "because Defendants cannot, as a matter of law, have tortiously interfered with their own contract"). The only contract discussed in the Amended Complaint is the Holder Settlement Agreement that Defendants signed. Plaintiff is well aware

that 21CFA is a party to the Holder Settlement Agreement because he has incorrectly accused
Defendants of breaching that same contract.

In any event, Plaintiff does not explain how Defendants supposedly "interfered" with the
Holder Settlement Agreement. As set forth in Section I, above, Plaintiff has not adequately
pleaded that Defendants caused a breach of that agreement. All that Defendants are alleged to
have done was to issue the truthful joint statement, which does not mention Plaintiff or any other
detail of Holder's allegations, to The New York Times.

## V.     The Defamation Claims Fail Because Plaintiff Does Not Identify Any False
        Statement That Defendants Made About Him

Plaintiff asserts three causes of action for defamation, slander per se, and libel per se.
Although Plaintiff pleads that "each and every statement *attributable to the Defendants* herein
was intentionally false and made with malicious intent," he does not expressly identify which
statements in the Amended Complaint were actually "attributable to the Defendants." Am.
Compl. ¶ 141 (emphasis added). In fact, the only public statement that is even arguably
attributed to Defendants is the joint statement made by Holder and Fox News published in the
NYT Article, which is also the only statement that Plaintiff alleges disparaged him. *See, e.g.,*
Am. Compl. ¶ 62 ("Fox and Tamara Holder provided a joint statement to The New York Times
. . . in violation of the [Holder Settlement Agreement]"); ¶ 66 (claiming that the "joint statement"
was intended to "exonerat[e]" Defendants).

As an initial matter, the joint statement cannot possibly amount to slander since it was a
*written* statement. *See Bobal v. Rensselaer Polytechnic* Institute, 916 F.2d 759, 763 (2d Cir.
1990) (dismissing slander claim where plaintiff "fails to adequately plead the actual words
*spoken*") (emphasis added). The slander claim should be dismissed on these grounds. Plaintiff's
remaining "defamation" and "libel" causes of action are effectively the same claim. *See Patton*

*v. Egan*, No. 12 Civ. 2500, 2014 WL 4652489, \*6 (S.D.N.Y. Sept. 18, 2014) ("libel is the written form of defamation"). Indeed, Plaintiff does not plead any additional conduct under his Seventh Cause of Action (libel) and merely incorporates his prior allegations. Am. Compl. ¶¶ 149-151.

The elements of libel are well known: "1) a written defamatory statement of fact concerning the plaintiff; 2) publication to a third party; 3) fault (either negligence or actual malice depending on the status of the libeled party); 4) falsity of the defamatory statement; and 5) special damages or per se actionability (defamatory on its face)." *Celle v. Filipino Reporter Enterprises Inc.*, 209 F.3d 163, 176 (2d Cir. 2000). Plaintiff fails to establish the first, most basic element: the existence of a "defamatory statement of fact concerning the plaintiff." *Id.* Plaintiff is not mentioned by name anywhere in the joint statement, which offers no facts by which Plaintiff can be identified, provides no facts about Holder's allegations, expresses no opinion on the accuracy of Holder's allegations, and does not set forth the "decisive action" that was taken. Therefore, the joint statement cannot be considered a "defamatory statement of fact concerning the plaintiff." *See Small Bus. Bodyguard Inc. v. House of Moxie, Inc.*, 230 F. Supp. 3d 290, 311 (S.D.N.Y. 2017). Where, as here, an allegedly defamatory statement does not mention the plaintiff, it is the plaintiff's heavy burden to establish that the "*average reader* would understand the statement, when read in context, refers to the plaintiff." *Id.* (emphasis added). No average reader of the joint statement could possibly have understood it to assert any wrongdoing by Plaintiff.[14]

---

14  The Second Circuit recently affirmed that an allegedly defamatory statement did not "concern" a particular person even when the statement provided identifying information including the year he graduated from college and his habit of biking through the college campus after graduation. *Elias v. Rolling Stone LLC*, No. 16-2465-cv, 2017 WL 4126956, \*\*6-7 (2d Cir. Sept. 19, 2017). The assumption that the statement referred to the defendant was "too speculative" to survive a motion to dismiss. *Id.* at \*6. Here, the

Importantly, the relevant statement at issue here is the joint statement issued by

Defendants and Holder and *not* the NYT Article in its entirety because nothing in that article is

allegedly attributable to Defendants other than the quoted joint statement. *See Kahn v. New York*

*Times Co., Inc.*, 269 A.D.2d 74, 80 (1st Dep't. 2000) ("It is axiomatic that a defendant cannot be

held liable for a libelous statement that it did not write or publish") (citing *Karaduman v.*

*Newsday*, 51 N.Y.2d 531 (1980); *Croton Watch Co., Inc. v. National Jeweler Magazine, Inc.*,

Case No. 06 Civ. 662, 2006 WL 2254818, *3 (S.D.N.Y. Aug. 7, 2006) ("a defendant cannot be

held liable for defamation where it did not make or publish the statement at issue"). *Kahn* is

directly on point. In *Kahn*, The New York Times published an article that was later republished

by another newspaper that "unilaterally adapted the article to suit its own editorial purposes"

including by "insert[ing an] allegedly defamatory subheading." 269 A.D.2d at 75, 80. The court

held that The New York Times could not be held liable for this new subheading, which was not

in its original article. *Id.* at 80. The same is true here: the joint statement did not refer to or

impugn Plaintiff; and The New York Times chose to republish it along with other statements that

suited the Times' "editorial purposes."[15] Defendants cannot be held liable for statements that are

not their own.

Moreover, Plaintiff's defamation and libel claims fail for the independent reason that the

joint statement is *not alleged to be false*. *See Giuffre v. Maxwell*, Case No. 15 Civ. 7433, 2017

WL 1536009, *4 (S.D.N.Y. April 22, 2017) ("Under New York law, 'truth is an absolute,

---

joint statement does not contain even the smattering of identifying information provided
in the statement at issue in *Elias*, which makes dismissal even more appropriate.

[15] Although The New York Times reporter put Plaintiff's name in the news article along
with the joint statement, Plaintiff concedes that the reporter had received the information
months earlier *from Holder*. Am. Compl. ¶ 83.

unqualified defense to a civil defamation action' and 'substantial truth' suffices to defeat a charge of libel'") (quoting *Jewell v. NYP Holdings, Inc.*, 23 F. Supp. 2d 348, 366 (S.D.N.Y. 1998)); *see also Small Business Bodyguard Inc.*, 230 F. Supp. 3d at 312 ("even assuming that a reasonable reader could draw a connection between [the statement and the plaintiff], the statement is still not defamatory because it cannot be proven false"). Defamation claims cannot prevail when "the gist or substance of the challenged statements [are] true." *Printers II, Inc. v. Professionals Publishing, Inc.*, 784 F.2d 141, 146 (2d. Cir. 1986). Plaintiff does not, and cannot, dispute the truth of the joint statement. In fact, Plaintiff *agrees* that Holder reported a sexual assault incident in 2016. Am. Compl. ¶ 19. He further *agrees* that Defendants took "decisive action" by terminating his employment. Am. Compl. ¶¶ 1, 25, 47 (Plaintiff is a "former employee" receiving "severance payments"). The remaining sentences about Holder thanking the network and the network being thankful to Holder are not material statements of fact, are certainly not about Plaintiff, and are also not alleged to be false. Given Plaintiff's failure to allege that any factual assertion in the joint statement is false, he falls far short of adequately pleading that Defendants made a defamatory public statement about him. *See Carter v. Visconti*, 233 A.D. 2d 473, 474 (2d Dep't 1996) (affirming dismissal of defamation claim based on statements to New York Police where "substantial truth" of the statements was not in dispute).

## CONCLUSION

As set forth above, none of the seven causes of action pleaded in the Amended Complaint states a valid legal cause of action. Plaintiff cannot cure those defects by larding his claims with irrational conspiracy theories. The Amended Complaint should be dismissed in its entirety pursuant to Fed. R. Civ. P. 12(b)(6).

Dated:    New York, New York
           October 6, 2017

Respectfully submitted,

DECHERT LLP

By: _____

Andrew J. Levander
Linda C. Goldstein
Nicolle L. Jacoby

1095 Avenue of the Americas
New York, New York 10036
Telephone: (212) 698-3817
Fax: (212) 698-0684
linda.goldstein@dechert.com

*Attorneys for Defendants 21st Century Fox
America, Inc. and Twenty-First Century
Fox, Inc.*