UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------X
FRANCISCO CORTES,

17 Civ. 5634 (RWS)

                         Plaintiff,

OPINION

        -against-

TWENTY-FIRST CENTURY FOX AMERICA,
INC., 21ST CENTURY FOX AMERICA, INC.,
TWNETY-FIRST CENTURY FOX, INC., JOHN
DOE, and JANE DOE,

                         Defendants.
------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 1/9/18

A P P E A R A N C E S:

Attorneys for Plaintiff

THE LAW OFFICES OF J.A. SANCHEZ-DORTA, P.C.
225 Broadway, Suite 1901
New York, NY 10007
By:  J.A. Sanchez, Esq.

Attorneys for Defendants

DECHERT LLP
1095 Avenue of the Americas
New York, NY 10036
By:  Andrew J. Levander, Esq.
     Linda C. Goldstein, Esq.
     Nicolle L. Jacoby, Esq.

**Sweet, D.J.**

Defendants Twenty-First Century Fox, Inc. and 21st Century Fox America, Inc. ("21CFA" and, collectively, the "Defendants"[1]) have moved pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the First Amended Complaint ("FAC") of Francisco Cortes ("Cortes" or the "Plaintiff"). Based on the conclusions set forth below, Defendants' motion is granted and Plaintiff's FAC is dismissed with prejudice.

## Prior Proceedings

On July 25, 2017, Plaintiff filed his Complaint, which was amended on August 7, 2017. See Dkt. Nos. 1, 8. Plaintiff's FAC alleges seven causes of action: breach of contract, fraudulent misrepresentation, civil conspiracy to defraud, intentional interference with contractual relationships, defamation per se, libel per se, and slander per se. See FAC ¶¶ 117-60.

On October 6, 2017, Defendants filed the instant motion to dismiss. Dkt. No. 22. The motion was heard and marked fully submitted on November 29, 2017.

---

[1]     Defendants state that there is no entity by the name of Twenty-First Century Fox America, Inc. See Defs.' Mem. at 1 n.1, Dkt. No. 24.

**Facts**

The Complaint sets forth the following facts, which are assumed true for the purpose of this motion to dismiss. See Koch v. Christie's Int'l PLC, 699 F.3d 141, 145 (2d Cir. 2012). As part of a motion to dismiss, a "court may consider any written instrument attached to the complaint as an exhibit or incorporated in the complaint by reference, as well as documents upon which the complaint relies and which are integral to the complaint." N.Y. Life Ins. Co. v. U.S., 724 F.3d 256, 258 n.1 (2d Cir. 2013) (quoting Subaru Distribs. Corp. v. Subaru of Am., Inc., 425 F.3d 119, 122 (2d Cir. 2005)); see also Chapman v. N.Y.S. Div. for Youth, 546 F.3d 230, 234 (2d Cir. 2008) (stating that a court may consider "undisputed documents, such as a written contract attached to, or incorporated by reference in, the complaint").

Prior to his termination, Cortes was a vice president of Fox News Latino, a division of Fox News Network, LLC ("Fox News"), which in turn was a subsidiary of Defendants. See FAC Ex. A (attaching Emily Steel, Fox Is Said to Settle With Former Contributor Over Sexual Assault Claims, THE N.Y. TIMES, Mar. 8, 2017, https://www.nytimes.com/2017/03/08/business/fox-news-roger-ailes-sexual-assault-settlement.html). While Cortes was at

Fox News, Tamara Holder ("Holder") was a Fox News contributor. Id. In February 2015, Cortes made sexual advances on Holder in his office; Holder has stated Cortes sexually assaulted her, while Cortes has stated the interaction was consensual. FAC ¶¶ 7, 33, 92, Ex. A; see also Carol Felsenthal, Former Fox News Pundit Who Accused Exec of Sexual Assault Returns to Chicago, CHICAGO MAGAZINE, May 2, 2017, http://www.chicagomag.com/Chicago-Magazine/Felsenthal-Files/April-2017/Tamara-Holder/ (describing the encounter from Holder's perspective and noting that afterward, Holder "remained silent for more than a year").

In July 2016, as part of The New York Times' reporting of sexual harassment allegations against then-Fox News Chairmen Roger Ailes, Times reporter Emily Steel ("Steel") reached out to Holder to inquire whether Holder had ever been harassed by Ailes. FAC ¶¶ 42, 83. Holder described her interactions with Steel at that time in relation to her own alleged sexual harassment as follows:

> I had been suppressing this. I had been boiling up.
> Emily Steel sent me a direct message on Twitter. She
> wanted to know if there were other stories about
> Roger. I answered her that I have nothing to say about
> Roger, but I know somebody who was sexually assaulted
> by a Fox News executive. Describing what happened to
> me in Cortes' office felt like letting the cat out of
> the bag. I said, holy shit, I'm going to be quoted in
> the New York Times. That was in July 2016 and it led
> to the worst six months of my life.

3

FAC ¶ 83 (quoting Felsenthal, supra). Steel did not publish any about Holder at this time, and Holder continued to keep her allegations secret from Fox News. See Felsenthal, supra (noting that the Times first published an article about Holder in early 2017); FAC ¶ 53 (quoting Yashir Ali, Top Talen Agency Discouraged Fox News Contributor From Reporting Alleged Sexual Assault, HUFFINGTON POST, May 2, 2017, https://www.huffingtonpost.com/entry/tamara-holder-icm-fox-news_us_590792c4e4b02655f83f4a8c) (describing how Holder held back from informing Fox News of her allegations in early September 2016 during employment contract negotiations).

In late September 2016, Holder informed Fox News for the first time of her sexual assault allegations and, on October 21, 2016, provided additional details of the encounter, including Cortes' identity. See Steel, supra; Felsenthal, supra. On October 21, 2016, Cortes was terminated. See FAC ¶¶ 1, 25, 47; Steel, supra; Felsenthal, supra.

On November 11, 2016, as part of Cortes' termination, Cortes and Fox News signed a severance and general release agreement (the "Severance Agreement") that contained, of relevance to the instant litigation, the following provision:

> Non-disparagement: Cortes and Fox each agree not to
> disparage, trade libel, or otherwise defame the other,
> and in the case of Fox, Cortes agrees not to
> disparage, trade libel, or otherwise defame Fox,
> and/or any of its officers and/or any of its current
> and/or former employees.

Amended Declaration of Linda C. Goldstein dated November 29,

2017 ("Goldstein Decl."), Ex. 1; see FAC ¶ 113 (describing

"contractual obligations" between Cortes and Fox News in

December 2016).

Around the same time as Cortes' termination, Holder drafted

and presented to Defendants a complaint that contained claims

against Fox News and Cortes. FAC ¶¶ 19, 113. Attorneys from

Paul, Weiss, who represented Defendants, met with Plaintiff to

see if he would testify against Holder in a mediation between

Fox News and Holder; Plaintiff refused to do because he believed

it would violate the non-disparagement provision of the

Severance Agreement. See FAC ¶ 113.

Holder's claims were resolved in February 2017 when Holder,

21CFA, and Cortes signed a settlement agreement (the "Holder

Settlement Agreement"), to which Cortes, with advice of counsel,

signed assent "as to Paragraph 6c and 12." FAC ¶¶ 20-22, Ex. B.

Portions of the Holder Settlement Agreement to which Cortes did

not assent upon signing, which included other signatories to the agreement, were redacted. FAC ¶¶ 29-30, see FAC Ex. B.

Paragraph 6c of the Holder Settlement Agreement provided that:

> Cortes, on behalf of himself and the Cortes Released Parties, hereby knowingly and voluntarily releases and discharges the Holder Released Parties from any and all Claims whatsoever in law, admiralty or equity, whether now known or unknown, suspected or unsuspected, vested or contingent, accrued or yet to accrue, against the Holder Released Parties which Cortes had, has, or hereafter can, shall or may have up until Effective Date.

FAC Ex. B, at 5. Paragraph 12 of the Holder Settlement Agreement provided that:

> Non-Disparagement. Holder agrees not to disparage, malign, or defame any Released Party, or to publish or cause to be published any statements portraying any Released Party in an unfavorable light. The Company [21CFA], [redacted], and Cortes agree not to disparage, malign or defame Holder, or to publish or cause to be published any statements portraying Holder in an unfavorable light. A statement by a Party that violates this provision subjects that Party to liquidated damages under Paragraph 11(n) of this Agreement.

FAC Ex. B, at 9; see also FAC ¶¶ 64, 77.

On March 8, 2017, The New York Times published an article by Steel that described the alleged sexual assault of Holder by Cortes (the "NYT Article"). FAC ¶¶ 41, 61, 62, 96, Ex. A. See generally Steel, supra. Included in the NYT Article was a joint

6

statement by Fox News and Holder released contemporaneously with

the article, reflected in the article as follows:

> Fox News released a joint statement with Ms. Holder saying that in September 2016 she "reported an incident of sexual assault at Fox News headquarters from the prior year."
>
> "Immediately after Ms. Holder notified Fox News of the alleged incident, the company promptly investigated the matter and took decisive action, for which Ms. Holder thanks the network," the statement continued. "Fox News is grateful to Ms. Holder for her many contributions during her tenure at the network and wishes her continued success."

FAC Ex. A, at 4-5 (the "Joint Statement"). Holder provided

assistance to Steel in Steel's preparation of the NYT

Article, which was based on the corroboration of others of

Holder's account. FAC ¶¶ 93, 100; see FAC Ex. A.

**Applicable Standards**

On a Rule 12(b)(6) motion to dismiss, all factual

allegations in the complaint are accepted as true and all

inferences are drawn in favor of the pleader. Mills v. Polar

Molecular Corp., 12 F.3d 1170, 1174 (2d Cir. 1993). A complaint

must contain "sufficient factual matter, accepted as true, to

'state a claim to relief that is plausible on its face.'"

Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl.

Corp. v. Twombly, 550 U.S. 544, 555 (2007)). A claim is facially

plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 663 (quoting Twombly, 550 U.S. at 556). In other words, the factual allegations must "possess enough heft to show that the pleader is entitled to relief." Twombly, 550 U.S. at 557 (internal quotation marks omitted).

While "a plaintiff may plead facts alleged upon information and belief 'where the belief is based on factual information that makes the inference of culpability plausible,' such allegations must be 'accompanied by a statement of the facts upon which the belief is founded.'" Munoz-Nagel v. Guess, Inc., No. 12 Civ. 1312 (ER), 2013 WL 1809772, at *3 (S.D.N.Y. Apr. 30, 2013) (quoting Arista Records, LLC v. Doe 3, 604 F.3d 110, 120 (2d Cir. 2010)); Prince v. Madison Square Garden, 427 F. Supp. 2d 372, 384 (S.D.N.Y. 2006); Williams v. Calderoni, 11 Civ. 3020 (CM), 2012 WL 691832, at *7 (S.D.N.Y. Mar. 1, 2012)). The pleadings, however, "must contain something more than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." Twombly, 550 U.S. at 555 (citation and internal quotation omitted).

**Defendants' Motion to Dismiss Is Granted**

Scattered around and built upon the facts described above, Plaintiff's FAC alleges a conspiracy theory involving Defendants, The New York Times, Paul, Weiss, and others worthy of its own Martin Scorsese thriller. According to Plaintiff, the Holder Settlement Agreement was a payment by Fox News to Holder to breach the non-disparagement clause and share her allegations with Steel, a "sycophant" journalist formerly employed with the Wall Street Journal—a publication owned by News Corporation ("News Corp."), an entity affiliated with Defendants—who, as a coconspirator, was to publish those statements in The New York Times. See FAC ¶¶ 14, 39, 80-82, 115. The overarching purpose of the conspiracy was to use Plaintiff, specifically chosen because he is Latino, as a "scapegoat" by Defendants to demonstrate that Defendants handled sexual harassment complaints aggressively. See FAC ¶¶ 10, 13, 15, 38-43, 83. Scapegoating Plaintiff would allow News Corp. to acquire complete ownership of the British Sky Broadcasting ("BSB"), protect the identity and shelter of two non-Latino signatories to the agreements, and increase coconspirators' public images or finances. See FAC ¶¶ 7, 10, 14-16, 36, 39, 49-55, 72, 81-82, 100-02.

Plaintiff's alleged facts can plausibly support neither his claims nor his theory of the case. Under both law and *sechel*, Defendants' motion is granted.[2] See Iqbal, 556 U.S. at 679 ("[D]etermining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense.") Each cause of action will be addressed in turn.

## 1. Breach of Contract (First Cause)

Plaintiff's first cause of action is for breach of contract. Plaintiff alleges that Defendants breached their contractual obligations with Plaintiff by disparaging Plaintiff through the Joint Statement in the NYT Article.[3] See FAC ¶¶ 41, 62, 66, 98, 116-21. As a result of the alleged breach, Plaintiff claims he "sustained damages, including, without limitation,

---

[2]     Yiddish for "common sense." Based on the briefing for the instant motion, this word is assuredly familiar to all parties. See Pl.'s Opp. at 7 n.7, 23, Dkt. No. 33; Defs.' Reply at 2, Dkt. No. 36.

[3]     Although not clearly laid out in the FAC's First Cause of Action, this is the most favorable construction of the claim, as the only agreement in the FAC signed between Plaintiff and Defendants is the Holder Settlement Agreement, see FAC Ex. B, and the only described statement made by Defendants after the Holder Settlement Agreement was the joint statement made in the NYT Article, see FAC ¶¶ 41, 62.

10

emotional distress, loss of employment opportunities, economic injuries and other direct and consequential damages." FAC ¶ 120.

"The elements of a breach of contract claim in New York are: (1) the existence of a contract, (2) performance by the party seeking recovery, (3) non-performance by the other party, and (4) damages attributable to the breach." RCN Telecom Servs., Inc. v. 202 Ctr. St. Realty LLC., 156 F. App'x 349, 350-51 (2d Cir. 2005) (citation omitted).[4] It is well-established that "[t]he best evidence of what parties to a written agreement intend is what they say in their writing." Greenfield v. Philles Records, Inc., 98 N.Y.2d 562, 569, 750 N.Y.S.2d 565, 780 N.E.2d 166 (2002) (citation omitted). A written agreement that is complete, clear, and unambiguous must be enforced according to

_____

[4]     New York law applies to this diversity action. "In diversity jurisdiction cases such as this, it is well settled that a federal court must look to the choice of law rules of the forum state." Curley v. AMR Corp., 153 F.3d 5, 12 (2d Cir. 1998) (citations omitted). "New York applies separate choice-of-law approaches to contract and to tort claims. In contract cases, New York courts apply the 'center of gravity' or 'grouping of contacts' choice of law theory . . . . By contrast, the preferred analytical tool in tort cases is to apply 'interest analysis,' where the policies underlying the competing laws are considered." Fin. One Pub. Co. v. Lehman Bros. Special Fin., 414 F.3d 325, 336 (2d Cir. 2005) (internal quotation marks, citation, and alterations omitted). Defendants are headquartered in New York, Plaintiff and Holder were employed in New York, the relevant contracts were negotiated in New York, and the NYT Article and joint statement were published in New York. Plaintiff has also not disputed this application.

11

its terms. Id. A contract is unambiguous when the contractual language has a definite and precise meaning about which there is no reasonable basis for a difference of opinion. Law Debenture Trust Co. of N.Y. v. Maverick Tube Corp., 595 F.3d 458, 467 (2d Cir. 2010).

When, as in the Holder Settlement Agreement, the definition of "disparagement" is not provided, courts have looked to authorities like Black's Law Dictionary as a source of definition. There, "disparage" is defined as "[t]o unjustly discredit or detract from the reputation of (another's property, product, or business)" and "disparagement" is defined as "[a] false and injurious statement that discredits or detracts from the reputation of another's property, product, or business." Kamfar v. New World Rest. Grp., Inc., 347 F. Supp. 2d 38, 49 n.55 (S.D.N.Y. 2004) (alterations in original) (quoting Black's Law Dictionary 483 (7th ed. 1999); accord Rain v. Rolls-Royce Corp., 626 F.3d 372, 379 (7th Cir. 2010) (affirming district court's use of Black's Law Dictionary to define "disparage" as contract term). While is it unclear whether a truthful statement can also be a disparaging one, at minimum these definitions indicate that a disparaging statement must be about, and clearly implicate, the allegedly disparaged subject. See Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc., 314 F.3d 48,

12

54 (2d Cir. 2002) (affirming district court's rejection of a statement as disparaging because the statement did not "impugn the quality" of the subject).

The basis for Defendants' alleged breach is the Joint Statement in the NYT Article, and that statement cannot plausibly have violated the Holder Settlement Agreement's non-disparagement clause because it cannot plausibly be read to disparage Plaintiff. The Joint Statement indicated that: (i) Holder reported an incident of sexual assault; (ii) Fox News promptly investigated the matter and took action; and (iii) Fox News was grateful to Holder for her contributions at the network. See FAC Ex. A, at 4-5. The statement does not mention Plaintiff by name—a fact Plaintiff concedes in his opposition papers—or any other identifying facts or allegations made against Plaintiff. See Pl.'s Opp. at 22. In short, the Joint Statement cannot be read plausibly to indicate anything, let alone anything discrediting, about Plaintiff. See Davis v. Nyack Hosp., 130 A.D.3d 455, 455, 13 N.Y.S.3d 371 (N.Y. App. Div. 2015) (finding a non-disparagement clause not breached by a written letter that did not mention the settlement agreement parties or agreement terms). The rest of the NYT Article, which was written by Steel and based on statements told to her by Holder, not Defendants, cannot sustain liability against

13

Defendants either under law, for which Plaintiff has put forward
no authority, or plausibility, despite Plaintiff's to portray
Holder and Defendants as conspiracy bedfellows. See FAC ¶¶ 85,
93, 100; Khan v. New York Times Co., 269 A.D.2d 74, 80, 710
N.Y.S.2d 41 (2000) (citation omitted) ("It is axiomatic that a
defendant cannot be held liable for a libelous statement that it
did not write or publish.").


Accordingly, Plaintiff's breach of contract claim is
dismissed.


2. Fraudulent Misrepresentation (Second Cause)


Plaintiff's second cause of action is for fraudulent
misrepresentation. The core of Plaintiff's pleaded allegation is
that Defendants "intentionally misrepresent[ed] material facts"
to Plaintiff. FAC ¶ 123. While it is difficult to identify which
statements Plaintiff alleges fraudulently induced him to sign
the Holder Settlement Agreement, reading the FAC most favorably,
there appear to be two specific material misrepresentations
alleged to have been made: that Fox News' attorneys, Paul,
Weiss, told Plaintiff that the Holder Settlement Agreement was
presented to Plaintiff redacted "solely to protect and shelter"
other signatories to the document, FAC ¶ 7, and that the Holder

14

Settlement Agreement's Paragraph 10 referred only to requests by government authorities for information and that Plaintiff was a released party under the terms of the agreement, see FAC ¶¶ 21-22.[5]

Under New York law, "[t]o state a cause of action for fraud, a plaintiff must allege a representation of material fact, the falsity of the representation, knowledge by the party making the representation that it was false when made, justifiable reliance by the plaintiff and resulting injury." Lerner v. Fleet Bank, N.A., 459 F.3d 273, 291 (2d Cir. 2006) (citing Kaufman v. Cohen, 307 A.D.2d 113, 119, 760 N.Y.S.2d 157, 165 (1st Dep't 2003)). Federal Rule of Civil Procedure 9(b) further requires that "[i]n alleging fraud . . . , a party must state with particularity the circumstances constituting fraud." To satisfy Rule 9(b), "the plaintiff must: '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements

_____

[5]     In his opposition papers, Plaintiff argues additional alleged fraudulent misrepresentations: that Defendant's attorneys represented to Plaintiff that they reached out in January 2017 only to investigate Holder's allegations, Pl.'s Opp. at 13, and that "every single substantive communication by" Paul, Weiss was fraudulent, Pl.'s Opp. at 16. The former is not alleged in the FAC to be false or relied upon and the latter is not made with the appropriate particularity described below. Neither need be addressed further.

15

were made, and (4) explain why the statements were fraudulent.'"
First Hill Partners, LLC v. BlueCrest Cap. Mgmt. Ltd., 52 F.
Supp. 3d 625, 637 (S.D.N.Y. 2014) (quoting Rombach v. Chang, 355
F.3d 164, 170 (2d Cir. 2004)). While "[u]nder Rule 9(b),
'[m]alice, intent, knowledge, and other condition of mind of a
person may be averred generally,' . . . plaintiffs must allege
facts that give rise to a strong inference of fraudulent
intent." Lerner, 459 F.3d at 290 (quoting Fed. R. Civ. P. 9(b))
(citation and some internal quotation marks omitted). "The
requisite 'strong inference' of fraud may be established either
(a) by alleging facts to show that defendants had both motive
and opportunity to commit fraud, or (b) by alleging
recklessness." Eaves v. Designs for Fin., Inc., 785 F. Supp. 2d
229, 247 (S.D.N.Y. 2011) (quoting Shields v. Citytrust Bancorp,
Inc., 25 F.3d 1124, 1128 (2d Cir. 1994)).

Plaintiff's fraudulent misrepresentation claim fails to
meet the necessary pleading requirements. As a preliminary
matter, the two specifically alleged statements in the FAC have
since been conceded by Plaintiff as not false. In his opposition
briefing, Plaintiff conceded that each alleged statement by
Defendants and Paul, Weiss, that under the Holder Settlement
Agreement Plaintiff was a released party and that the
agreement's Paragraph 10 applied only to government requests for

16

information "was not a lie." Pl.'s Opp. at 16. Similarly,
Plaintiff's allegation that Defendants represented to Plaintiff
that names on the Holder Settlement Agreement were redacted to
protect those individual's identities was also conceded as
truthful. See Pl.'s Opp. at 15 (stating that "the redactions
were really intended to ensure that . . . [Plaintiff] would . .
. not be able to leak the names of the [redacted persons]").

The remaining, more oblique or vague allegations about
Defendants' statements surrounding the Holder Settlement
Agreement littered throughout the FAC also fail for other
reasons. Some allegations are the kind of "sweeping references"
that "will not satisfy the particularity requirements of Rule
9(b)." B&M Linen, Corp. v. Kannegiesser, USA, Corp., 679 F.
Supp. 2d 474, 481 (S.D.N.Y. 2010) (citation omitted); see, e.g.,
FAC ¶ 45 (alleging flatly that the "statements made by FOX
executives to Mr. Cortes and his attorney throughout the time
leading up to the execution of [the Holder Settlement Agreement]
were intentional misrepresentations, made in a deliberate
attempt to have Mr. Cortes rely on those misrepresentations").
Other allegations, such as that Paul, Weiss attorneys wished to
speak on the phone rather than email, see FAC ¶¶ 23-24, or that
the Holder Settlement Agreement contained redactions that
Plaintiff was unable to read, see FAC ¶¶ 30, 32, do not

constitute the necessary "strong inference of fraudulent intent" or even a plausible showing that Plaintiff was, in fact, defrauded. Shields, 25 F.3d at 1128.

Lastly, nowhere in the FAC does Plaintiff plausibly allege that he relied to his detriment on the alleged misrepresentations. At most, Plaintiff alleges that by signing the Holder Settlement Agreement, it "forc[ed] him to remain silent against the allegations" against him with regard to his interactions with Holder, a right Plaintiff already signed away under the terms of the previously signed Severance Agreement, since Holder was clearly a Fox News employee as a Fox News "contributor."[6] FAC ¶ 33; see also Pl.'s Opp. at 14-15 (arguing that by signing the Holder Settlement Agreement it "would tie [Plaintiff's] hands and make him look sufficiently guilty to the world"); FAC Ex. A, at 3; Goldstein Decl., Ex. 1.

Together, none of this suffices to plead fraudulent misrepresentation. Accordingly, Plaintiff's fraudulent misrepresentation claim is dismissed.

---

[6]     Harm that is alleged in the FAC, such as Plaintiff's allegations that he lost television opportunities based on the publication of the NYT Article, are not plausibly connected to Plaintiff's signing of the Holder Settlement Agreement. See FAC ¶ 37.

3. Civil Conspiracy to Defraud (Third Cause)

Plaintiff's third cause of action is for conspiracy to defraud. The conspiratorial allegations based on the "corrupt agreement" between Fox News, Holder, and others to make Plaintiff a "scapegoat" are already laid out above. Pl.'s Opp. at 25; see FAC ¶¶ 129-32; supra at 9.

"It is well settled under New York law that there is no substantive tort of conspiracy." Antonios A. Alevizopoulos & Assocs., Inc. v. Comcast Int'l Holdings, Inc., 100 F. Supp. 2d 178, 187 (S.D.N.Y. 2000) (citing Goldstein v. Siegel, 19 A.D.2d 489 (App. Div. 1st Dep't 1963)). "In order to state a claim for conspiracy, therefore, there must be allegations of an independent actionable tort." Id. (citing Guthartz v. City of N.Y., 84 A.D.2d 707 (App. Div. 1st Dep't 1981)). As Plaintiff's fraudulent misrepresentation claim has already been dismissed, so too must Plaintiff's civil conspiracy claim. See Ho Myung Moolsan Co. v. Manitou Mineral Water, Inc., 665 F. Supp. 2d 239, 256 (S.D.N.Y. 2009) (internal quotation marks omitted) (dismissing New York State conspiracy charge because a "claim of conspiracy cannot stand alone and must be dismissed if the underlying independent tort has not been adequately pleaded"); Treppel v. Biovail Corp., No. 03 Civ. 3002 (PKL), 2005 WL

427538, at *6 (S.D.N.Y. Feb. 22, 2005) (finding that a civil conspiracy claim must "fail[ ] as well because . . . there is no independent tort upon which to base a conspiracy").

Accordingly, Plaintiff's civil conspiracy to defraud claim is dismissed.

## 4. Intentional Interference with Contractual Relations (Fourth Cause)

Plaintiff's fourth cause of action is for intentional interference with contractual relations. Plaintiff alleges that the Holder Settlement Agreement was a "valid contract" between Plaintiff and Defendants, to which Defendants "intentionally and improperly interfered." FAC ¶¶ 133-37.

"The tort of intentional interference with contractual relations is comprised of four elements: (1) the existence of a contract, enforceable by the plaintiff, (2) the defendant's knowledge of the existence of that contract, (3) the intentional procurement by the defendant of the breach of the contract, and (4) resultant damages to the plaintiff." eCommission Sols., LLC v. CTS Holdings, Inc., No. 15 Civ. 2671 (KBF), 2017 WL 985881, at *10 (S.D.N.Y. Mar. 13, 2017) (quoting Joan Hansen & Co. v. Everlast World's Boxing Headquarters Corp., 744 N.Y.S.2d 384,

391 (App. Div. 1st Dep't 2002); accord Enercomp, Inc. v.
McCorhill Pub., Inc., 873 F.2d 536, 541 (2d Cir. 1989). "One
asserting a tortious interference claim must . . . show that the
defendant was not a party to the contract with which he
allegedly interfered." TVT Records v. Island Def Jam Music Grp.,
412 F.3d 82, 88 (2d Cir. 2005) (citing Finley v. Giacobbe, 79
F.3d 1285, 1295 (2d Cir. 1996)).

Defendants were a party to the Holder Settlement Agreement,
a fact pleaded by Plaintiff and not disputed in his opposition
papers. See FAC ¶ 134; Pl.'s Opp. at 28-29. "Defendants cannot,
as a matter of law, have tortiously interfered with their own
contract." Campeggi v. Arche Inc., No. 15 Civ. 1097 (PGG), 2016
WL 4939539, at *10 (S.D.N.Y. Sept. 14, 2016) (citing TVT
Records, 412 F.3d at 88.) As such, this claim "cannot stand."
Fillmore E. BS Fin. Subsidiary LLC v. Capmark Bank, No. 11 Civ.
4491 (PGG), 2013 WL 1294519, at *15 (S.D.N.Y. Mar. 30, 2013)
(dismissing tortious interference with contract claim after even
the plaintiff acknowledged that defendants were parties to the
agreement), aff'd, 552 F. App'x 13 (2d Cir. 2014).

Accordingly, Plaintiff's intentional interference with
contractual relations claim is dismissed.

21

### 5. Defamation Per Se, Libel Per Se, and Slander Per Se (Fifth, Sixth, and Seventh Causes)

Plaintiff lastly alleges, over three separate causes of action, defamation per se, libel per se, and slander per se. See FAC ¶¶ 138-51. While Plaintiff does not identify specific statements of defamation, he alleges that "[e]ach and every statement attributable to the Defendants herein was intentionally false and made with malicious intent for the purpose of destroying Mr. Cortes' professional and career prospects and for the Defendants' own commercial gain." FAC ¶ 141. As these three claims have overlapping law, they will be considered in tandem.

A claim for "defamation" is an umbrella term that incorporates the "twin torts of libel and slander." Albert v. Loksen, 239 F.3d 256, 265 (2d Cir. 2001) (citations omitted). "Defamation is the injury to one's reputation either by written expression, which is libel, or by oral expression, which is slander." Biro v. Conde Nast, 883 F. Supp. 2d 441, 456 (S.D.N.Y. 2012) (citation omitted). The elements of a cause of action [to recover damages] for defamation are a false statement, published without privilege or authorization to a third party, . . . fault . . . and . . . either [causing] special harm or [constituting] defamation per se." Lan Sang v. Ming Hai, 951 F. Supp. 2d 504,

517 (S.D.N.Y. 2013) (alternations in original) (quoting Epifani
v. Johnson, 65 A.D.3d 224, 233, 882 N.Y.S.2d 234 (App. Div. 2d
Dep't 2009)); see also Church of Scientology Int'l v. Behar, 238
F.3d 168, 173 (2d Cir. 2001) (explaining that a public figure
alleging defamation under New York law must establish that "the
statements . . . were (1) of and concerning [the plaintiff], (2)
likely to be understood as defamatory by the ordinary person,
(3) false, and (4) published with actual malice"). To invoke the
exceptional case of a per se defamatory statement, the
allegation must be: "(1) a statement charging an individual with
a serious crime; (2) a statement that tends to injure another in
his or her trade, business, or profession; (3) a statement that
claims an individual has a 'loathsome disease;' or (4) a
statement 'imputing unchastity to a woman.'" Pure Power Boot
Camp, Inc. v. Warrior Fitness Boot Camp, LLC, 813 F. Supp. 2d
489, 550 (S.D.N.Y. 2011) (quoting Liberman v. Gelstein, 80
N.Y.2d 429, 435, 590 N.Y.S.2d 857, 605 N.E.2d 344 (1992)).
"[D]efamatory statements should be construed as they would be
commonly understood . . . in the context of their publication"
and "a court should not render statements actionable by giving
them a 'strained or artificial construction.'" Lan Sang, 951 F.
Supp. 2d at 518 (internal citations and quotation marks
omitted).

23

Each of Plaintiff's claims must be dismissed. To start, the only public statement made by Defendants alleged in the FAC is the Joint Statement with Holder as incorporated in the NYT Article. As the alleged defamatory statement was written, not spoken, Plaintiff's claim for slander per se must be dismissed. See Bobal v. Rensselaer Polytechnic Inst., 916 F.2d 759, 763 (2d Cir. 1990) (affirming dismissal of a claim for slander when plaintiff failed to "plead adequately the actual words spoken"). Moreover, a claim for libel per se falls under the umbrella of a defamation per se claim, so charging both is redundant. See, e.g., Pasqualini v. MortgageIT, Inc., 498 F. Supp. 2d 659, 667 n.7 (S.D.N.Y. 2007) (noting that the court would use the terms "defamation" interchangeably with regard to plaintiff's separate slander and libel claims); see also FAC ¶ 149-51 (Plaintiff's libel claim adds no additional claims and only incorporates prior allegations made in his defamation per se pleading).

As to the remaining libel per se claim, it must be dismissed for two reasons. First, the Joint Statement is not alleged to be false. "[T]ruth is an absolute, unqualified defense to a civil defamation action and 'substantial truth' suffices to defeat a charge of libel." Giuffre v. Maxwell, No. 15 Civ. 7433 (RWS), 2017 WL 1536009, at *4 (S.D.N.Y. Apr. 27, 2017) (citation omitted). As described above, the Joint

24

Statement describes that Holder reported an incident, that Fox News promptly investigated it and took action, and that Fox News expressed gratitude towards Holder. See FAC Ex. A. Under the pleaded facts in the FAC, most of the Joint Statement, like that Holder reported a sexual assault or that Defendants responded (by terminating Plaintiff's employment), is uncontested as true; whether Defendants were appreciative of Holder's services, moreover, is not a material statement of fact. See FAC ¶¶ 1, 19, 25, 47. Given the Joint Statement either is not or cannot be "proven false," it cannot be claimed to be defamatory. Small Bus. Bodyguard Inc. v. House of Moxie, Inc., 230 F. Supp. 3d 290, 312 (S.D.N.Y. 2017).

Second, Plaintiff has not plausibly alleged that the Joint Statement put out by Defendants was a defamatory statement "concerning" him. "A plaintiff 'must be clearly identifiable' from the statement in order for the statement to be defamatory." Small Bus. Bodyguard Inc., 230 F. Supp. 3d at 311 (citing Abramson v. Pataki, 278 F.3d 93, 102 (2d Cir. 2002)). There is no reference or description of Plaintiff in the Joint Statement. It is implausible that an "average reader would understand the statement" to be a reference to Plaintiff. Small Bus. Bodyguard Inc., 230 F. Supp. 3d at 311; see also Elias v. Rolling Stone LLC, 872 F.3d 97, 107 (2d Cir. 2017) (rejecting as "too

25

speculative" that a reader could find an article was "of and concerning" a plaintiff where the article described a student who was a Phi Kappa Psi member, 2013 graduate, and rode his bike regularly around campus for over a year prior to graduation). That the Joint Statement was later incorporated by The New York Times into the NYT Article, and any implications a reader of the NYT Article might have drawn by the juxtaposition of the Joint Statement with Steel's article, does not create liability for Defendants, who were not plausibly responsible for what else was written. See Croton Watch Co. v. Nat'l Jeweler Magazine, Inc., No. 06 Civ. 662 (GBD), 2006 WL 2254818, at *3 (S.D.N.Y. Aug. 7, 2006) (citing Khan, 710 N.Y.S.2d at 46) ("A defendant cannot be held liable for defamation where it did not make or publish the statement at issue.").

Accordingly, Plaintiff's claims for defamation per se, slander per se, and libel per se are dismissed.

**Conclusion**

For the foregoing reasons, Defendants' motion to dismiss Plaintiff's FAC is granted. See Baron v. Complete Mgmt., Inc., 260 F. App'x 399 (2d Cir. 2008) (internal quotation marks, citation, and alternations omitted) ("Dismissal is appropriate where, as here, a complaint is a labyrinthian prolixity of unrelated and vituperative charges that defy comprehension.") Moreover, as Plaintiff's FAC contains "substantive problems such that an amended pleading would be futile," the FAC is dismissed with prejudice. Henry v. Davis, No. 10 Civ. 7575 (PAC) (JLC), 2011 WL 3295986, at *5 (S.D.N.Y. Aug. 1, 2011) (citing Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000)), report and recommendation adopted, 2011 WL 5006831 (S.D.N.Y. Oct. 20, 2011).

It is so ordered.

**New York, NY**
**January 9 , 2018**

ROBERT W. SWEET
**U.S.D.J.**

27